This Opinion is a
Precedent of the TTAB

Mailed: October 31, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Shenzhen IVPS Technology Co. Ltd.*

*v.*

*Fancy Pants Products, LLC*

———

Opposition No. 91263919

———

John Alumit of Alumit IP for Shenzhen IVPS Technology Co. Ltd.

Rick Ruz of Ruz & Ruz PL for Fancy Pants Products, LLC.

———

Before Goodman, Pologeorgis and English,
 Administrative Trademark Judges.

Opinion by Goodman, Administrative Trademark Judge:

Fancy Pants Products, LLC ("Applicant") filed an application to register the mark

("smokes" disclaimed) on the Principal Register for "Cigarettes

containing tobacco substitutes not for medical purposes containing only cannabis

with a delta-9 THC concentration of not more than 0.3% on a dry weight basis" in International Class 34.[1]

Shenzhen IVPS Technology Co. Ltd ("Opposer") opposes registration of Applicant's mark on the ground of likelihood of confusion under Section 2(d), 15 U.S.C. § 1052(d). Opposer pleads ownership of eleven registered SMOK and SMOK-formative marks for, among other things, electronic cigarettes, parts and components, and related services. Opposer's pleaded registrations include the Principal Register registration for the following mark:

SMOK (in standard characters, Section 2(f) claimed)[2] for the following goods and services:

---

[1] Application Serial No. 87856115 has an amended filing date of December 20, 2018 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging a date of first use and a date of first use in commerce of December 20, 2018. Applicant amended its filing date from the actual filing date to the effective date of the 2018 amendments to the Agricultural Marketing Act of 1946 ("Farm Bill") as provided in the Trademark Office's "Examination Guide 1-19 Examination of Marks for Cannabis and Cannabis-Related Goods and Services after Enactment of the 2018 Farm Bill" (May 2, 2019), https://www.uspto.gov/sites/default/files/documents/Exam%20Guide%201-19.pdf.

 Applicant provided the following description of the mark: "The mark consists of an [sic] circle with two red lines, one inside the other separated by white space, that form the outer border of the circle. Each of the two red lines is broken in numerous places. The word 'Smokes' is in red and begins and ends with a capital letter 'S'. Immediately above the word, a solid red line connects with the first capital 'S' and continues over the remaining letters ending just past the last capital 'S'. Immediately under the word, a solid red line beginning to the left of the first capital 'S' underlines the entire word and connects with the bottom of the last capital 'S.'" The colors red and white are claimed as a feature of the mark but the color black represents background and is not claimed as a feature of the mark.

[2] Registration No. 6072213 issued on the Principal Register on June 9, 2020 based on an application filed on July 31, 2018, listing a date of first use of May 12, 2011 and a date of first use in commerce of June 26, 2013.

Chargers for electronic cigarettes; Batteries for electronic cigarettes; Battery chargers for electronic cigarettes; Battery covers in the nature of battery cases for electronic cigarettes in International Class 9;

Electronic cigarettes; Oral vaporizers for smokers; Smokers' oral vaporizer refill cartridges sold empty; Electronic cigarette atomizers sold empty; Electronic cigarette refill cartridges sold empty; Component parts of electronic cigarettes in the nature of tanks for electronic cigarettes, coils for electronic cigarettes, drip tips for electronic cigarettes, tank tubes for electronic cigarettes, and silicone rings for electronic cigarettes in International Class 34; and

On-line retail store services featuring electronic cigarettes, oral vaporizers for smokers in International Class 35.[3]

Opposer also pleaded a family of marks alleging that "Opposer is also the owner of a family of marks around the wording SMOK in connection with various smoking articles in class 034" and that Opposer's prior use of its family of SMOK marks precedes Applicant's filing and use in commerce dates.[4]

Applicant filed an answer denying the salient allegations in the notice of opposition and asserting amplifications of its denials of the likelihood of confusion claim.[5]

---

[3] The remaining ten pleaded registrations Opposer identified by mark and serial number in the notice of opposition are as follows: Registration No. 4745397 SMOK HOOKAH, Registration No. 4745398 SMOK ECIG, Registration No. 4745399 SMOK CIGAR, Registration No. 4745396 SMOK MINI, Registration No. 4745395 SMOK PIPE, Registration No. 4676828 SMOK TECHNOLOGY, Registration No. 4545449 SMOK, Registration No. 4676830 SMOK DUAL COILS, Registration No. 4676829 SMOK MODS, and Registration No. 4710763 SMOK FASHION. Notice of Opposition ¶¶ 3-4, 1 TTABVUE 7.

[4] Notice of Opposition ¶¶ 4, 8, 1 TTABVUE 7-8. Opposer argued in its brief that it owns a family of SMOK marks. Opposer's brief, 13 TTABVUE 13.

[5] 4 TTABVUE. These amplifications are not true affirmative defenses. *See, e.g., Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241, at *4 n.5 (TTAB 2021). Applicant also alleged "failure to state a claim" in its answer which is not a true affirmative defense because it relates to an assertion of the insufficiency of the pleading of Opposer's claim rather than a statement of a defense to a properly pleaded claim. This "defense" has been waived because

Only Opposer filed a brief in this case.[6] Opposer submitted testimony and other evidence during its testimony period.

Applicant did not take testimony or introduce any evidence during its testimony period nor file a brief, but it is not required to do so. *Yazhong Investing Ltd. v. Multi-Media Tech. Ventures, Ltd.*, 126 USPQ2d 1526, 1531 n.13 (TTAB 2018) ("Because Respondent, as defendant herein, is under no obligation to submit evidence or a brief, we do not construe Respondent's failure to do so as a concession of the case.") ( citing TRADEMARK BOARD MANUAL OF PROCEDURE (TBMP) § 801.02(b) (June 2017)). As plaintiff, Opposer bears the burden of proving its entitlement to a statutory cause of action and its Section 2(d) claim by a preponderance of the evidence. *See B&B Hardware, Inc. v. Hargis Ind., Inc.*, 575 U.S. 138, 113 USPQ2d 2045, 2049 (2015) ("The party opposing registration bears the burden of proof, see § 2.116(b), and if that burden cannot be met, the opposed mark must be registered, see 15 U.S.C. § 1063(b)").

## I.    The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the involved application. In addition, Opposer introduced notices of reliance upon Applicant's responses to requests for admissions,[7]

---

it was not pursued. *U.S. Olympic Comm. v. Tempting Brands Netherlands B.V.*, 2021 USPQ2d 164, at *4 (TTAB 2021).

[6] References to the brief and to the record refer to the Board's TTABVUE docket system. Opposer's brief is at 13 TTABVUE. The number preceding "TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE" refers to the page number(s) of that particular docket entry.

[7] Opposer has introduced into the record Applicant's responses to requests for admissions which, for the most part, are denials or effective denials. While any admissions are properly of record, the denials are not. Trademark Rule 2.120(k)(3)(i), 37 C.F.R. § 2.120(k)(3)(i); *see*

Applicant's initial disclosures, third-party website evidence, and pages from Opposer's and Applicant's websites.[8] Opposer also submitted the declaration testimony of Freda Huang, Head of Global Sales for Opposer, and accompanying exhibits.[9]

Opposer also submitted, as exhibits to the notice of opposition, TESS (Trademark Electronic Search System) screenshot captures of all of its pleaded registrations, accompanied by photocopies of the original certificates of registration, for purposes of making the registrations of record. *See* Trademark Rule 2.122(d)(1), 37 C.F.R. § 2.122(d)(1).[10]

A. Are the pleaded registrations properly of record?

Trademark Rule 2.122(d)(1) provides the manner in which a plaintiff may properly make its pleaded registration(s) of record when submitting its pleading.[11] In 2007, to conform to existing practice in connection with the submission of pleaded registrations to be received in evidence and made part of the record, the Board amended Trademark Rule 2.122(d)(1) to provide for, in addition to the submission of

---

*also, e.g.*, *Ayoub, Inc. v. ACS Ayoub Carpet Serv.*, 118 USPQ2d 1392, 1395 n.9 (TTAB 2016) ("admissions are properly of record, the denials are not"); *Life Zone Inc. v. Middleman Grp. Inc.*, 87 USPQ2d 1953, 1957 n.10 (TTAB 2008) (a denial to a request for admission is inadmissible because it establishes neither the truth nor the falsity of the assertion, "but rather leaves the matter for proof at trial."). Therefore, Opposer's references to any of Applicant's denials have no probative value and we do not consider them.

[8] Opposer's Notices of reliance, 5-7 TTABVUE.

[9] Huang Declaration and exhibits, 8 TTABVUE.

[10] Notice of Opposition, 1 TTABVUE.

[11] Trademark Rule 2.122(d)(2) addresses proof of a pleaded registration during trial, by notice of reliance.

a copy of a pleaded registration prepared by the Office showing current status and current title, the submission of a copy ("current printout of information") from the Office's electronic database records to establish current status and title of the registration.[12] MISCELLANEOUS CHANGES TO TRADEMARK TRIAL AND APPEAL BOARD RULES OF PRACTICE, 72 Fed. Reg. 42242, 42249, 42262 (August 1, 2007). *See also Research in Motion Ltd. v. NBOR Corp.*, 92 USPQ2d 1926, 1928 (TTAB 2009) ("the inclusion in the amended rule of an option to prove a pleaded registration by relying on USPTO records … can therefore only be taken as an indication that the Office meant to liberalize the means for proving a pleaded registration").[13]

In 2016, the Board again amended Trademark Rule 2.122(d)(1) to change "current printout of information" to "current copy of information" "to broaden the manner in which a registration may be attached to include, for example, printouts or

---

[12] The amended rule was effective August 31, 2007, and also removed the requirement that a plaintiff provide two copies of the registration prepared and issued by the Office. *See also Sterling Jewelers Inc. v. Romance & Co.*, 110 USPQ2d 1598, 1602 n.3 (TTAB 2014) (noting that two copies of registration certificates are no longer required).

[13] Although the policy set forth by amended Trademark Rule 2.122(d)(1) liberalized the nature of the documentation that must be submitted with the electronic filing of a notice of opposition or petition to cancel, the plaintiff still must electronically attach to the submission current status and current title copies of registrations or current copies of electronic database records showing status and title. *Melwani v. Allegiance Corp.*, 97 USPQ2d 1537, 1540 (TTAB 2010) ("The amendment does not contemplate a plaintiff's mere inputting of a registration number when prompted by ESTTA, the Board's on-line filing system, to list any registration upon which the plaintiff relies. … [to result in introduction of the registration of record].")." "The fact that completion of the ESTTA filing form [to list any registration on which plaintiff relies] results in the creation of electronic records in the Board's TTABVUE system … contain[ing] links to information on a pleaded registration, is for administrative ease and it is insufficient to make the pleaded registrations of record." *Id. See also Corporate Fitness Programs Inc. v. Weider Health and Fitness Inc.*, 2 USPQ2d 1682, 1683-84 n.3 (TTAB 1987) ("The Board does not take judicial notice of registrations that reside in the Patent and Trademark Office.").

downloads." MISCELLANEOUS CHANGES TO TRADEMARK TRIAL AND APPEAL BOARD RULES, 81 Fed. Reg. 69950, 69963 (October 7, 2016).[14] As presently amended, Trademark Rule 2.122(d)(1) provides:

> A registration of the opposer or petitioner pleaded in an opposition or petition to cancel will be received in evidence and made part of the record if the opposition or petition is accompanied by an original or photocopy of the registration prepared and issued by the Office showing both the current status of and current title to the registration, or by a current copy of information from the electronic database records of the Office showing the current status and title of the registration. For the cost of a copy of a registration showing status and title, see § 2.6(b)(4).

Under the rule, in the context of being received into evidence "an original or photocopy of the registration prepared and issued by the Office showing both the current status of and current title to the registration," the term "current" has been interpreted as requiring the issuing date of the title and status copies of the pleaded registrations to "be substantially contemporaneous with the date of the filing in this Office of the notice of opposition." *Royal Hawaiian Perfumes, Ltd. v. Diamond Head Prods. of Haw., Inc.*, 204 USPQ 144, 146 (TTAB 1979) (citing *Marriott Corp. v. Pappy's Enter., Inc.*, 192 USPQ 735, 736 (TTAB 1976)). The term "current" in this context also has been interpreted as "reasonably contemporaneous," "sufficiently recently," and "shortly prior." *Hard Rock Cafe Int'l (USA) Inc. v. Elsea*, 56 USPQ2d 1504, 1511 (TTAB 2000) ("status and title" copies of registrations were not of record because they "cannot be considered to have been issued either subsequent to or at a time reasonably contemporaneous with the filing of the notice of opposition");

---

[14] The amended rule was effective January 14, 2017.

*Electronic Data Sys. Corp. v. EDSA Micro Corp.*, 23 USPQ2d 1460, 1461 n.4 (TTAB 1992) ("a status and title copy prepared and issued by the Office shortly prior to the filing of the opposition of record" is in evidence); *Jean Patou Inc. v. Theon Inc.*, 18 USPQ2d 1072, 1075 (TTAB 1990) (in connection with the notice of reliance "the question of whether a photocopy of a pleaded registration has been prepared and issued by the Patent and Trademark Office or has been prepared by the Office sufficiently recently to show current status and title goes to the issue of the competency of the copies of the registration, per se").

We attribute the same meaning of "current" to the portion of Trademark Rule 2.122(d)(1) providing for submission of a "current copy of information from the electronic records database of the Office." Thus, the rule contemplates submission of a copy from the Office's electronic database records to be reasonably or substantially contemporaneous with the initiation of the proceeding, upon the filing of either the notice of opposition or petition to cancel. While a screenshot capture is an allowable form of a "copy" contemplated by the rule, the screenshot capture still must provide all necessary information to establish that it is "current."

In this case, the TESS screenshot captures of the pleaded registrations submitted by Opposer with the notice of opposition do not reflect the retrieval date of the database record or the date the screenshots were captured. As a result, with one exception, the copies do not conform to the requirement for "current" copies under the Trademark Rule.[15] Similarly, Opposer's submission of copies of the original

---

[15] While a TSDR (Trademark Status and Document Retrieval) database inquiry for a registration record provides a retrieval date within the body of the result ("This page was

registration certificates of the pleaded registrations attached as exhibits to the notice of opposition do not reflect current status and current title of the registrations and do not make the registrations of record, again with one exception.[16]

To summarize, undated copies of the electronic database records of the Office are not sufficient to make a registration of record because the Board cannot ascertain whether they are "substantially" or "reasonably" contemporaneous with the filing of the notice of opposition or petition to cancel. For the same reason, plain copies of registrations generally are not sufficient to make a registration of record. But if the pleaded registration issued "substantially" or "reasonably" contemporaneous with the filing of the notice of opposition or petition to cancel, the undated copy of the electronic database record of the Office or plain copy of the registration will be sufficient to

---

generated by TSDR on 2022-06-29 16:15:10 EDT") and is reflected when the copy is generated from the download and print options offered (see example image in the Appendix attached to this decision), a TESS database search result provides the user with a date the database was last updated, (e.g., "TESS was last updated on Wed Jun 29 03:32:23 EDT 2022") and has no download or print options (see example image in the Appendix attached to this decision). Opposer's electronic copies are TESS screenshot captures that omitted the portion of the database result that identifies the database as TESS and the date the TESS database last updated. This information is reflected preceding the registration information when accessed in TESS. Two of Opposer's TESS submissions are reproduced in the Appendix attached to this decision.

Opposer's screenshots also do not contain a URL and a date accessed (if, for example, printed through the browser feature) which would be sufficient to establish the TESS database record copy is substantially or reasonably contemporaneous with the filing of the notice of opposition. *But see STX Financing, LLC v. Terrazas*, 2020 USPQ2d 10989, at *1 (TTAB 2020) (when submitted under notice of reliance, under Trademark Rule 2.122(e)(1), 37 C.F.R. § 2.122(e)(1), TESS printouts of third-party applications and registrations are official records, and there is no requirement that the submission meet the requirement of Internet materials), *appeal dismissed sub nom. STX Financing, LLC. v. Vidal*, No. 22-1192, 2022 WL 1124962 (Fed. Cir. Apr. 15, 2022).

[16] A further defect in the TESS screenshot captures and copies of the certificates of registration for ten of the pleaded registrations: SMOK HOOKAH, SMOK ECIG, SMOK CIGAR, SMOK MINI, SMOK PIPE, SMOK TECHNOLOGY, SMOK, SMOK DUAL COILS, SMOK MODS and SMOK FASHION is that they do not reflect Opposer as the owner.

establish current status and title and will be considered competent evidence. *See United Global Media Grp., Inc. v. Tseng*, 112 USPQ2d 1039, 1043 (TTAB 2014) (as an exception, allowing plain copies of registrations to constitute competent evidence, when the registration's issue date is "reasonably contemporaneous" with the filing date of the notice of opposition or petition for cancellation). This is the case for one of Opposer's registrations.

In particular, Principal Register Registration No. 6072213 for the mark SMOK (in standard characters, Section 2(f)), issued on the Principal Register on June 9, 2020, which is substantially or reasonably contemporaneous with the July 29, 2020 filing date of the notice of opposition.[17] Therefore, we consider both the undated TESS screenshot copy and the plain copy of this registration to be competent evidence sufficient to make the registration of record.[18] *See United Global Media Grp.*, 112 USPQ2d at 1043 (finding that a copy of the original certificate of registration that issued on March 29, 2011 was sufficiently contemporaneous to the July 20, 2011 filing date of the notice of opposition to make it of record even though no status and title copy accompanied the registration attached to the notice of opposition).

As for the ten remaining registrations, the TESS screenshot captures of the pleaded registrations SMOK, SMOK HOOKAH, SMOK ECIG, SMOK CIGAR, SMOK MINI, SMOK PIPE, SMOK TECHNOLOGY, SMOK DUAL COILS, SMOK MODS

---

[17] Opposer is listed as the owner of this registration in both the copy of the certificate of registration and the TESS screenshot capture.

[18] The plain copy of the certificate of registration and the TESS screenshot capture for the SMOK Principal Register registration submitted by Opposer are reproduced in the Appendix attached to this decision.

and SMOK FASHION, all issuing either in 2014 or 2015, are not substantially or reasonably contemporaneous with the July 29, 2020 filing date of the notice of opposition, and therefore, are not competent evidence of current status and current title. There are no stipulations in the record as to these registrations and no admissions in the answer to establish current status and current title of these pleaded registrations. *See Philip Morris Inc. v. Reemtsma Cigarettenfabriken GmbH*, 14 USPQ2d 1487, 1488 n.3 (TTAB 1990). Nor were current status and title copies of these registrations introduced by notice of reliance, or by a witness who testified as to the current status and current title of these pleaded registrations. *See* Trademark Rule 2.122(d)(2), 37 C.F.R. § 2.122(d)(2); *Hard Rock Cafe Int'l (USA) Inc. v. Elsea*, 56 USPQ2d at 1511 (witness did not testify as to current status of registrations and did not make the registrations of record). Therefore, the ten remaining pleaded registrations are not properly introduced into the record.

B. Were any of the pleaded registrations not introduced into the record tried by implied consent?

For the ten pleaded registrations that are not introduced into the record as exhibits to the notice of opposition (SMOK,[19] SMOK HOOKAH, SMOK ECIG, SMOK CIGAR, SMOK MINI, SMOK PIPE, SMOK TECHNOLOGY, SMOK DUAL COILS, SMOK MODS, and SMOK FASHION), Opposer did not specifically allege prior common law use of these marks. Therefore, we consider whether prior use based on

---

[19] Opposer alleged ownership in the notice of opposition of two SMOK registrations: Registration No. 4545449 and Registration No. 6072213. As alleged by Opposer, these registrations' identifications cover different goods. Notice of Opposition, ¶¶ 1, 3, 1 TTABVUE 6-7.

common law rights of any of these marks was tried by implied consent. Fed. R. Civ. P. 15(b). *Cf. Teledyne Techs., Inc. v. W. Skyways, Inc.*, 78 USPQ2d 1203, 1206 (TTAB 2006) (where petitioner failed to properly make its pleaded registration of record and prior use had been pleaded, "petitioner must rely on its common law rights as shown by the record" "for purposes of the likelihood of confusion analysis"), *aff'd*, 208 F. App'x 886 (Fed. Cir. Dec. 6, 2006).

Implied consent has been found when a party does not object to the submission of evidence and/or argues the evidence in its brief on the case. *See Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1924-26 (TTAB 2011) (petitioner's unpleaded common law marks tried by implied consent where petitioner mentioned marks in discovery responses, emphasized its intention to rely on unpleaded marks through testimony to which respondent did not object at the time, and was afforded an opportunity to cross-examine the witness; respondent's later objection in its brief untimely), *aff'd*, 188 F. Supp. 3d 22 (D.D.C. 2016), *aff'd*, 743 F. App'x 457, 128 USPQ2d 1172 (D.C. Cir. 2018); *Time Warner Entm't Co. v. Jones*, 65 USPQ2d 1650, 1653 n.2 (TTAB 2002) (unpleaded registrations tried by implied consent where "applicant has raised no objection to opposer's submission of and reliance upon these unpleaded registrations").

Opposer's witness testified about use of the marks SMOK, SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, and an additional mark, SMOK TECH, prior to Applicant's effective filing date.[20] Applicant did not raise any

---

[20] Huang Declaration ¶ 4, 8 TTABVUE 2.

objection to this testimony as it did not file a brief on the case and it did not seek to cross-examine Opposer's witness declarant as permitted by Trademark Rule 2.123(c), 37 C.F.R. § 2.123(c). Accordingly, we find that Opposer's prior use based on common law of the marks SMOK, SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE and SMOK TECH has been tried by implied consent.[21]

## II. Entitlement to Statutory Cause of Action[22]

Entitlement to a statutory cause of action is an issue in every inter partes case. *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837 at *3 (Fed. Cir. 2020), *cert. denied*, 142 S. Ct. 82 (2021). To establish entitlement to a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute and (ii) proximate causation. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *4 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021). Demonstrating a real interest in opposing registration of a mark satisfies the zone-of-interests requirement, and demonstrating a reasonable belief in damage by the registration of a mark demonstrates damage proximately caused by registration of the mark. *Id*. at 7-8.

As indicated, Opposer's SMOK Principal Register registration is of record. This registration is valid and subsisting and establishes Opposer's direct commercial

---

[21] Thus, prior use based on common law of the pleaded marks SMOK HOOKAH, SMOK CIGAR, SMOK DUAL COILS, and SMOK TECHNOLOGY was not tried by implied consent.

[22] We now refer to what previously had been called standing as "entitlement to a statutory cause of action." But our prior decisions and those of the Federal Circuit interpreting "standing" under Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, remain equally applicable. *Spanishtown Enters., Inc. v. Transcend Res., Inc.*, 2020 USPQ2d 11388, at *2 (TTAB 2020).

interest in the proceeding and its belief in damage. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) (pleaded registrations "suffice to establish …direct commercial interest"; a belief in likely damage can be shown by establishing a direct commercial interest).

Therefore, Opposer has shown its statutory entitlement to a cause of action and hence, to oppose registration. *Australian Therapeutic Supplies Pty. Ltd.* 2020 USPQ2d 10837, at *3; *Cunningham*, 55 USPQ2d at 1844; *New Era Cap Co. v. Pro Era, LLC*, 2020 USPQ2d 10596, at *6 (TTAB 2020) (pleaded registrations establish statutory entitlement to bring opposition); *Barbara's Bakery v. Landesman*, 82 USPQ2d 1283, 1285 (TTAB 2007) (opposer's entitlement to opposition established by pleaded registration being of record and non-frivolous likelihood of confusion claim).

## III. Priority

### A. Opposer's pleaded Section 2(f) Principal Register SMOK registration that is of record

Because Opposer's pleaded valid and subsisting Section 2(f) SMOK Principal Register registration is of record, and Applicant has not counterclaimed to cancel it, priority is not at issue as to this mark and the goods and services covered by the registration. *King Candy, Inc. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974); *Signal Co., Inc. v. Sigmor Corp.* 190 USPQ 81, 83 (TTAB 1975).

## B. Family of Marks

As indicated, Opposer alleged in the notice of opposition a family of marks based on the "house mark 'SMOK'" and argued in its brief that it owns a family of SMOK marks.[23]

"A family of marks is a group of marks having a common characteristic … [that] only arises if the purchasing public recognizes that the common characteristic is indicative of a common origin of the goods." *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 57 USPQ2d 1557, 1559 (Fed. Cir. 2001) (quoting and citing *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991)). "Recognition of the family of marks is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family." *J&J Snack Foods Corp.*, 18 USPQ2d at 1891.

Ownership of multiple registrations containing the alleged family feature or term is not sufficient, in and of itself, to establish that a party owns a family of marks. *See New Era Cap Co.*, 2020 USPQ2d 10596, at *7 (citing cases); *In re Globe-Union Inc.*, 189 USPQ 158, 160 (TTAB 1975) ("[O]wnership of a number of registrations for marks containing a common component is insufficient, per se, to establish a 'family of marks' identified and recognized in the trade and by purchasers of such goods by said common feature."). "[A]n opposer relying on a family of marks is relying on common

---

[23] Notice of Opposition ¶ 4, 1 TTABVUE 7; Opposer's brief, 13 TTABVUE 13. Although Opposer alleges ownership of a family of marks in reference to its registrations, "a family of marks is created not by registration but by use." *Gates Rubber Co. v. W. Coupling Corp.*, 179 USPQ 186, 187 (TTAB 1973).

law rights in the alleged family." *New Era Cap Co.*, 2020 USPQ2d 10596, at *7. Thus, the fact that the Office has registered Opposer's Principal Register SMOK mark under Section 2(f) and this registration is entitled to Section 7(b), 15 U.S.C. § 1057, presumptions of validity, ownership, and exclusive right to use the registered mark in connection with the identified goods and services, does not constitute evidence that the public recognizes SMOK as a family feature or that SMOK, as a family feature, has acquired distinctiveness. As stated by *Sports Auth. Mich., Inc. v. PC Auth., Inc.*, 63 USPQ2d 1782, 1786 n.2 (TTAB 2002):

> While an issued registration carries certain evidentiary presumptions, there is no legal basis for opposer's suggestion that the Office has engaged in any valuation of the extent of opposer's rights in its registered marks or for the proposition that, in issuing registrations, the Office somehow has determined that opposer's marks constitute a family. We have accorded the registrations properly made of record the evidentiary weight to which they are entitled under the statute and have evaluated opposer's claim of the existence of a family of marks based on the evidence of record.

*appeal dismissed*, 46 F. App'x 962 (Fed. Cir. Sept. 9, 2002); *See also TPI Holdings, Inc. v. TrailerTrader.com, LLC*, 126 USPQ2d 1409, 1422 n.81 (TTAB 2018), (considering distinctiveness of the term "trader" for purposes of family of marks analysis where petitioner owned four Trader-formative registrations under Section 2(f); dictionary evidence for "trader" and Trader-formative third-party registrations was in the record as well as a limited amount of third-party use evidence) *civil action dismissed*, No. 1:18-cv-00125-PLM-RSK (W.D. Mich. June 3, 2019).

Therefore, while we acknowledge the Section 7(b) presumptions that attach to Opposer's Section 2(f) SMOK Principal Register registration, this statutory

presumption does not factor into the family of marks analysis which considers the priority and the distinctiveness of the family feature under common law. *See Marion Labs. Inc. v. Biochemical/Diagnostics Inc.*, 6 USPQ2d 1215, 1219 (TTAB 1988) (considering whether opposer's evidence of use and promotion of its alleged family of marks was prior to applicant's use and whether the evidence demonstrated "that the family feature is distinctive," and not "descriptive or highly laudatory or commonly used in the trade it cannot serve as the basis for a family of marks, at least in the absence of a showing of distinctiveness").

To establish ownership of a family of marks, it must be shown by competent evidence "prior use of marks sharing a recognizable common characteristic," *Truescents LLC v. Ride Skin Care, LLC*, 81 USPQ2d 1334, 1337-38 (TTAB 2006), and "that prior to the entry into the field of the opponent's mark, the marks containing the claimed 'family' feature or at least a substantial number of them, were used and promoted together by the proponent in such a manner as to create public recognition coupled with an association of common origin predicated on the 'family' feature." *Marion Labs. Inc.,* 6 USPQ2d at 1218 (*quoting Land-O-Nod Co. v. Paulison*, 220 USPQ 61, 65-66 (TTAB 1983)).

Thus, the preliminary issue of common law priority of the alleged family of marks must be determined before we consider the family of marks issue in connection with likelihood of confusion. *New Era Cap Co.*, 2020 USPQ2d 10596, at *6. Opposer bears the burden of proving the existence of a family of SMOK marks prior to any date Applicant can rely upon for purposes of priority. *TPI Holdings Inc. v.*

*Trailertrader.com, LLC*, 126 USPQ2d at 1419. We must "look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use." *W. Fla. Seafood Inc. v. Jet Rests. Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994). We "look … primarily to the nature and character of opposer's advertising and promotional material" in determining whether a family of marks exists. *Witco Chem. Co. v. Chemische Werke Witten GmbH*, 158 USPQ 157, 160 (TTAB 1968).

<ol>
<li>1. Has Opposer established common law prior use of a family of SMOK marks?</li>
</ol>

In the present case, for purposes of priority, Applicant is entitled to rely on the effective filing date of its application as its constructive use date because Applicant's goods would have been unlawful and the mark not registrable prior to the effective date of the 2018 amendments to the Farm Bill. *See* "Examination Guide 1-19 Examination of Marks for Cannabis and Cannabis-Related Goods and Services after Enactment of the 2018 Farm Bill." *Cf. Minn. Mining and Mfg. Co. v. Nat'l Cash Register Co.*, 154 USPQ 240, 241 (TTAB 1967) ("Registrant filed its application for registration on the Principal Register on September 15, 1960, claiming a use in commerce on or about June 23, 1960. Registrant could not have qualified for registration on the Supplemental Register since it did not have the lawful use in commerce for the year preceding the filing of the application required by the statute (Section 23 of the Act of 1946). Since the amendment changing to the Supplemental Register was filed on February 10, 1964, that date must be considered the effective filing date."). In addition, Applicant took no testimony on its

behalf to establish an earlier use date than the effective filing date. *See Miss Universe, Inc. v. Drost,* 189 USPQ 212, 213 (TTAB 1975) (applicant took no testimony on its behalf and is limited to the application filing date as the earliest date of use upon which he can rely). Thus, at the very least, Opposer's priority for its alleged family of SMOK marks must predate Applicant's effective filing date of December 20, 2018.

We consider whether Opposer's witness testimony and evidence has established prior use of an alleged family of marks, with SMOK as the family feature, before Applicant's priority date of December 20, 2018. As indicated, Opposer's witness only testified about the use of SMOK (as a house mark) and the marks SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, and SMOK TECH.[24] We note that most of the marks identified by Opposer's witness utilize SMOK with a descriptive term (e.g., pipe, mods, ecig, and mini).

As to the goods and services used in connection with these marks, Opposer's witness testified very generally about electronic cigarette goods, parts and accessories that it has sold since 2013, and its provision of retail store services offering electronic cigarettes and oral vaporizers for smokers since 2016.[25] Broad general statements by a witness that lack sufficient detail are usually not adequate, especially in the absence of corroborating documentary evidence. *See Mars Generation, Inc. v. Carson,* 2021 USPQ2d 1057, at *20 (TTAB 2021) (conclusory testimony consisting of the "bald assertion that he used the marks for the service" that lacked "specifics" was

---

[24] Huang Declaration ¶ 4, 8 TTABVUE 2.

[25] Huang Declaration ¶¶ 5-6, 8 TTABVUE 3.

"significantly undermined by lack of detail" and lack of corroborating evidence); *H. Betti Indus., Inc. v. Brunswick Corp.*, 211 USPQ 1188, 1197 (TTAB 1981) (vague, indefinite and inconsistent testimony accompanied by inadequate documentary evidence found insufficient to support priority claim). The Huang testimony does not associate the offering of electronic cigarette goods, parts, and accessories and the rendering of the retail store services offering electronic cigarettes goods and oral vaporizers with any particular SMOK mark, or group of SMOK marks, and there is no documentary evidence provided in connection with the witness testimony showing use and promotion of these particular SMOK marks together in connection with these goods and services.

The documentary evidence submitted in connection with this testimony is webpages from four third-party websites identified as exhibit 1. The witness testimony simply identifies these third-party websites as online locations where Opposer's goods are sold, referencing the attached exhibit.[26] Opposer's witness did not specifically testify about the content of the webpages nor the dates of the

---

[26] Huang declaration ¶ 9, 8 TTABVUE 3. Opposer's witness listed in her testimony the website addresses for third-party websites identified in exhibit 1 but not the dates the webpages were accessed. *Id*. The website pages themselves include the URL but no date. Although Opposer's witness testimony failed to identify the date these website documents were actually accessed or printed, for purposes of admissibility, this procedural shortcoming has been waived. *Cf. City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.*, 106 USPQ2d 1668, 1672 (TTAB 2013) ("[a]ny shortcomings in respondent's original submission ... under notice of reliance, such as its failure to identify the URL and when the document was actually accessed (either printed out or downloaded), are procedural deficiencies that were not timely raised by petitioner and thus have been waived"); *Mag Instrument, Inc. v. Brinkmann Corp.*, 96 USPQ2d 1701, 1708 (TTAB 2010) (authentication objection to Internet exhibits that could have been raised during oral deposition was waived), *aff'd mem.*, No. 2011-1052, 2011 WL 5400095 (Fed. Cir. Nov. 9, 2011).

webpages. Thus, Opposer's witness relies on these exhibits for what they show on their face, and not to establish prior use of SMOK-formative marks in the past.

In any event, aside from the fact that this evidence appears to be for dates after Applicant's constructive use date,[27] none of the website webpages show on their face goods displaying the marks SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE and SMOK TECH, separately or together.[28] The Giant Vapes website shows the offering of goods under a SMOK NORD mark, displayed with goods from other manufacturers, and a separate webpage on this website lists SMOK as one of a number of "featured brands."[29] The Vapor4Life website shows the offering of goods under a SMOK NOVO mark, displayed with goods by other manufacturers, and a separate webpage lists SMOK as one of other featured brands.[30] The ProVape website offers three SMOK products, (SMOK MORPH, SMOK G-PRIV, SMOK ARC FOX), not grouped together, and displayed with products from other manufacturers on a webpage. The Element Vape website devotes an entire brand category to Opposer's goods, displaying numerous product listings identified under SMOK-formative marks, including SMOK NORD, SMOK NOVO and SMOK RIGEL;

---

[27] We note that the webpage printouts of at least three of the websites reference the year 2021 on their face. A Giant Vapes webpage (giantvapes.com) states "20% sitewide … valid thru 6.21.21," and both the Element Vape (elementvape.com) and the ProVape (provape.com) webpages bear 2021 copyright notices. 8 TTABVUE 6-9; 10-18; 23-25. *But see Embarcadero Tech., Inc. v. RStudio, Inc.,* 105 USPQ2d 1825, 1834 n.75 (TTAB 2013) (A copyright date "does not establish that the marks identified in the documents were actually in use...").

[28] The SMOK formative marks are identified in the product descriptions; as pictured, the marks displayed on many of the products themselves or the packaging are not discernible.

[29] Huang declaration, exhibit 1, 8 TTABVUE 7, 9, (giantvapes.com).

[30] Huang declaration, exhibit 1, 8 TTABVUE 19, 20, (vapor4life.com).

however, none of these webpages show any of the SMOK-formative marks identified by Opposer's witness.[31]

In view of the vagueness and non-specific witness testimony, and the lack of any corroborating documentary evidence, we find there is insufficient evidence to support common law prior use, with presumptive use dates of December 31, 2013 (goods) and December 31, 2016 (services), of any particular SMOK marks as a family with the goods and services identified by Opposer's witness.[32] *See Mars Generation,* 2021 USPQ2d 1057, at *20 (probative value of testimony is significantly undermined by witness' utter lack of detail).

Opposer's witness also testified about advertising on social media and expenditures of over $1 million dollars in connection with "vaping products since 2015 under the house mark 'SMOK,'" which includes the marks SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE and SMOK TECH.[33] However, the witness did not elaborate on the type of "vaping products" advertised under any of

---

[31] Huang declaration, exhibit 1, 8 TTABVUE 10-18, (elementvape.com). The pages are displayed under the website category "Home > Brands > SMOKTech." *Id*. at 10.

[32] When only a year is given as the date of first use, the date presumed is the last day of the year. Therefore, because the witness did not identify a specific month or day in 2013 or 2016, we presume a date no earlier than the last day of the year of 2013 and 2016. *See Bass Pro Trademarks, L.L.C. v. Sportsman's Warehouse, Inc.*, 89 USPQ2d 1844, 1856 (TTAB 2008) ("In view of the uncertainty of respondent's testimony and lack of documentation, we conclude that respondent's date of first use can be no earlier than March 31, 1995, the last day of the specified time period identified in Mr. Utgaard's testimony") (citing *Osage Oil & Trans., Inc. v. Standard Oil Co.*, 226 UPSQ 905, 911 n.22 (TTAB 1985)); *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 213 USPQ 597, 598 n.5 (TTAB 1982) (documentary evidence showed first use in 1977, the month and day were unknown, therefore, the Board could not presume any date earlier than the last day of the proved period), *aff'd*, 706 F.2d 1213 (Fed. Cir. 1983).

[33] Huang Declaration ¶¶ 7, 4, 8 TTABVUE 2, 3.

these marks, nor support this testimony with documentary evidence. We find this testimony is too vague to be probative as it lacks specificity as to the nature of the vaping goods used with any of these marks and lacks any corroborating documentary evidence showing use and promotion of SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE and SMOK TECH together as a family with "vaping products," with a presumptive use date of December 31, 2015.

Opposer also submitted under notice of reliance website printouts from the smoketech.com website and additional webpages from the Element Vape third-party website that were accessed and printed on June 26, 2021.[34] Opposer's witness testified that the smoktech.com website is owned by Opposer.[35] These webpage printouts can be considered for what they show on their face.[36] *See Spiritline Cruises LLC v. Tour Mgmt. Servs. Inc.*, 2020 USPQ2d 48324, at \*2 (TTAB 2020) ("we consider Internet printouts and other materials properly introduced under a notice of reliance without supporting testimony only for what they show on their face rather than for the truth of the matters asserted therein.").

Aside from the June 2021 access date of these webpages, which is later than Applicant's priority date, none of these webpages show any of the SMOK-formative marks identified by Opposer's witness (SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, and SMOK TECH). Opposer's smoktech.com

---

[34] Opposer's notice of reliance, 7 TTABVUE 5-38.

[35] Huang declaration ¶ 9, 8 TTABVUE 3.

[36] Opposer's notice of reliance indicates the relevance of these webpages is "related channels of trade." Opposer's notice of reliance, 7 TTABVUE 2.

website lists the product name and description of the goods without any SMOK-formative component identified (e.g. Nord Kit, Morph Kit, Acro Kit). Where the marks are discernible as photographs of the actual products on these webpages, only SMOK is displayed alone on the goods, or the product mark is displayed alone on the goods without the SMOK family feature (e.g., ARCFOX).[37] As to the Element Vape website, for which very similar webpages were submitted by Opposer's witness as part of exhibit 1, the product listings identify the name of the goods as SMOK combined with other terms, but none are SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, and SMOK TECH .[38] Where the marks are discernible on the goods themselves on these webpages, only SMOK is displayed on the photographed goods; or the discernible product marks displayed on the photographed goods do not show the SMOK family feature as part of the mark (e.g., RPM, MORPH, MORPH2).[39] Therefore, these webpages do not show use and promotion of the SMOK family feature with the marks SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, and SMOK TECH on goods prior to Applicant's priority date.

In sum, Opposer's testimony and other evidence of record does not establish that the asserted marks SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, and SMOK TECH were used and promoted together in such a manner

---

[37] Opposer's notice of reliance, 7 TTABVUE 10, 11, 13, 14-26.

[38] Opposer's notice of reliance, 7 TTABVUE 28-38.

[39] Opposer's notice of reliance, 7 TTABVUE 29-37. Only one of the photographed products appears to show a SMOK formative mark, i.e., SMOK OFRF. *Id.* at 37.

so as to create consumer recognition of SMOK as a family feature prior to Applicant's priority date.

In any event, the application of the family of marks doctrine requires a showing that the SMOK family feature is "not descriptive or highly suggestive or so commonly used in the trade that it cannot function as the distinguishing feature of any party's mark." *Marion Labs. Inc.*, 6 USPQ2d at 1218-19 (quoting *Land-O-Nod Co.*, 220 USPQ at 65-66). That is, "if the asserted family feature is descriptive or highly laudatory or commonly used in the trade it cannot serve as the basis for a family of marks, at least in the absence of a showing of distinctiveness" of the family feature. *Id.* at 1219. *See also Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1049 (Fed. Cir. 2018) ("[A]pplication of the family of marks doctrine 'requires a showing that the family feature or 'surname' is distinctive enough to trigger recognition 'in and of itself.'… [i]t may be more accurate to say that a descriptive term can serve as a family surname only where there is a strong showing of secondary meaning in the term.") (quoting *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 24 USPQ2d 1181, 1187 (7th Cir. 1992) (quoting 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:19, at 103 (3d ed. 1992))); *Norwich Pharmacal Co. v. Salsbury Labs.*, 168 USPQ 250, 255 (TTAB 1970) ("Even a descriptive term may become the basis for a 'family' of marks, if a secondary meaning therein could be established.") (citation omitted).

### 2. Is Opposer's SMOK family feature distinctive?

We consider whether the SMOK family feature in Opposer's alleged family of marks is distinctive, highly suggestive, or descriptive. *See TPI Holdings, Inc. v.*

*TrailerTrader.com, LLC,* 126 USPQ2d at 1422, 1427 (considering the term TRADER in connection with family of marks claim and finding that the "term 'trader' is inherently weak, and perhaps descriptive, in the context of bringing sellers and buyers together given its defined meaning as 'a person who trades; a merchant or businessman … the weakness is accentuated when it is preceded by terms that are descriptive or generic for the particular type or field of goods being offered for sale"); *Sports Auth. Mich., Inc.,* 63 USPQ2d at 1801-02 (making the observation that the marks in the "___Authority" family "are highly suggestive" and "[t]he term 'Authority,' too, is highly suggestive when used as part of a series of marks for retail store services, in that the term readily suggests that [opposer] can provide customers 'authoritative' assistance."); *Marion Labs. Inc.*, 6 USPQ2d at 1219-20 (considering whether the family feature TOXI is highly suggestive or descriptive and finding that "'TOXI' is no more than suggestive of the goods").

The alleged family feature SMOK is not a term listed in the dictionary and does not have an established dictionary pronunciation. *See StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 111 USPQ2d 1649, 1651 (Fed. Cir. 2014) (citing *In re Belgrade Shoe Co.*, 411 F.2d 1352, 162 USPQ 227 (CCPA 1969)) ("[t]here is no correct pronunciation of a trademark that is not a recognized word"). Opposer, in its brief, submits that "it is possible to pronounce 'SMOK' and 'SMOKE' in the same way" and that "smokes," the plural of "smoke," is "similar in sound" to SMOK.[40]

---

[40] Opposer's brief, 13 TTABVUE 12, 13.

The word "smoke" is pronounced with a long "ō" \ˈsmōk\.[41] Opposer's witness testified that the SMOK family feature is pronounced by its customers either as "[smok]" or "[smohk]."[42] Therefore, SMOK can be pronounced with either a long "ō" or a short "o," (/ɑ/) but in the context of these goods and services (electronic cigarettes, parts, and accessories, and retail store services for related goods), as Opposer acknowledges, SMOK most likely is pronounced with a long "ō," as "smoke."[43] *In re State Chem. Mfg. Co.*, 225 USPQ 687, 689 (TTAB 1985) (although "fom" could be pronounced as "mom" with a short "o," in the context of the goods, "fom" is the phonetic equivalent of "foam" which is descriptive of "industrial cleaner for carpets, rugs and upholstery"). *See also Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 328 (1938) (NU in NU-ENAMEL found equivalent of "new"); *In*

---

[41] MERRIAM-WEBSTER DICTIONARY, https://www.merriamwebster.com/dictionary/smoke (accessed October 31, 2022). The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format or regular fixed editions. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *Threshold TV Inc. v. Metronome Enters. Inc.*, 96 USPQ2d 1031, 1038 n.14 (TTAB 2010) (the Board may take judicial notice of online dictionary definitions also available in printed form).

[42] Huang declaration ¶ 3, 8 TTABVUE 2.

[43] Opposer's allegations in the notice of opposition and the arguments in its brief indicate its agreement that SMOK and "smoke" are phonetic equivalents. See Notice of Opposition ¶ 10, 1 TTABVUE 8 ("Indeed, the wording 'SMOKES' [in Applicant's mark] sounds like the plural form of Opposer's 'SMOK' [mark]."); Opposer's brief, 13 TTABVUE 12 ("Applicant's SMOKES mark appears to be the plural form of Opposer's main trademark, SMOK, because it adds only the letters 'ES' at the end. …it is possible to pronounce 'SMOK' and 'SMOKE' in the same way."). *See Robinson v. Hot Grabba Leaf, LLC*, 2019 USPQ2d 149089, at *8 (TTAB 2019) (Board considered statements in application file declaration taken together with Petitioner's statements in brief, "as admissions that the term 'grabba' is currently viewed by the relevant public as, at a minimum, immediately conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps") *cancellation order vacated on default judgment*, No. 0:19-cv-61614-DPG (S.D. Fla. Dec. 17, 2019).

*re Quik-Print Copy Shops, Inc.*, 616 F.2d 523, 205 USPQ 505, 507 n.9 (CCPA 1980) ("[t]here is no legally significant difference here between 'quik' and 'quick'"); *In re Mayer-Beaton Corp.*, 223 USPQ 1347, 1348 (TTAB 1984) (BIKINEEZ is the phonetic equivalent of "bikinis"). The purchasing public is aware of the fact that electronic cigarettes and related parts and accessories are directed to tobacco smokers as evidenced by the website evidence referenced by Opposer's witness.[44] Thus, pronouncing SMOK as "smoke" would not be strained, and both Opposer and Opposer's witness acknowledge that SMOK is pronounced by many of its customers as "smoke."

Opposer does not dispute, and we find on this record, that consumers are likely to view and verbalize the term SMOK as the phonetic equivalent and a misspelling of "smoke."[45] *See Fleetwood Co. v. Sylvia Mende*, 298 F.2d 797, 132 USPQ 458, 460 (CCPA 1962) (TINTZ, is a misspelling of "tints" for hair coloring formula); *Am. Aloe Corp. v. Aloe Creme Labs., Inc.,* 420 F.2d 1248, 164 USPQ 266, 268-269 (7th Cir. 1970) (ALO is the phonetic equivalent of the generic name "aloe" for goods containing aloe as an ingredient; defendant has not achieved sufficient secondary meaning in a family of ALO marks to preclude others from using the term); *In re State Chem. Mfg. Co.*, 225 USPQ at 689 (FOM is the phonetic equivalent of "foam" which is descriptive of "industrial cleaner for carpets, rugs and upholstery"); *Cambridge Filter Corp. v. Servodyne Corp.*, 189 USPQ 99, 103 (TTAB 1975) (in connection with a family of

---

[44] Huang declaration, ¶ 9, exhibit 1, 8 TTABVUE 5-26.

[45] Opposer's brief, 13 TTABVUE 12, 13.

marks claim for the suffixes FLO and CAP, the Board observed that "flo" is the phonetic equivalent of "flow" and possesses a highly suggestive if not a descriptive significance as applied to air filters and that "cap" is at least suggestive of the capacity of air filters); *In re Yardney Elec. Corp.*, 145 USPQ 404, 405 (TTAB 1965) ("[t]he purchasing public is aware of the fact that nickel is used in storage batteries. The immediate impression of 'NICEL' as used on a battery is 'nickel'" and "we conclude that 'NICEL' is merely a misspelling and phonetic equivalent of 'nickel' and means the same thing").

"Smoke" is defined as the "act of smoking tobacco" and is an informal term for a cigarette or a cigar. *See* OXFORD LIVING DICTIONARY;[46] *Marion Labs. Inc.*, 6 USPQ2d at 1219-20 (in considering whether the asserted family feature TOXI is highly suggestive or descriptive, the Board took judicial notice of the dictionary definition of "toxi"). Three of the third-party websites where Opposer's goods are sold show on their face that the goods offered are nicotine products directed to smokers of tobacco and those of legal smoking age. The use of the terms "smoke" or "smoker" and "smoking" on these webpages indicate that "smoke" (in noun and verb forms) has descriptive significance in connection with electronic cigarette goods.[47] *See Specialty*

---

[46] Application Serial No. 87856115, March 11, 2019 Office Action at TSDR 4. (oxforddictionary.com).

[47] The Element Vape website includes a statement that "Products sold on this site are for adult smokers." Huang Declaration exhibit 1, 8 TTABVUE 18. The ProVape website includes a statement that "You must be of legal smoking age in your territory to purchase products." *Id*. at 25. The Vapor4Life website states "best ecigs for Smokers" … No Matter how much you smoke, we'll guide you to the perfect product that fits your needs. … Which best describes your smoking habits?" *Id*. at 21.

*Brands, Inc. v. Coffee Bean Distrib., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1285 (Fed. Cir. 1984) (evidence of third-party use shows that the word "spice" has descriptive significance when used in conjunction with spiced teas; "[t]hird-party usage can demonstrate the ordinary dictionary meaning of a term or the meaning of a term to those in the trade.").

Thus, the term "smoke," or its phonetic equivalent SMOK (Opposer's alleged family feature), is descriptive in relation to Opposer's electronic cigarettes, parts, and accessories and retail store services featuring those goods. *See TPI Holdings, Inc. v. TrailerTrader.com, LLC,* 126 USPQ2d at 1422, 1427 (in connection with family of marks claim, finding that the "term 'trader' is inherently weak, and perhaps descriptive, in the context of bringing sellers and buyers together given its defined meaning as 'a person who trades; a merchant or businessman"); *Sports Auth. Mich., Inc. v. PC Auth., Inc.*, 63 USPQ2d at 1801-02 (in connection with family of marks claim, making the observation that "[t]he term "Authority," too, is highly suggestive when used as part of a series of marks for retail store services, in that the term readily suggests that [opposer] can provide customers 'authoritative' assistance."); *Am. Standard Inc. v. Scott & Fetzer Co.*, 200 USPQ 457, 461 (TTAB 1978) (in connection with family of marks claim utilizing the term AQUA, the Board observed that "the term 'AQUA' possesses an obvious meaning or connotation of 'water' which would be known to the average purchaser of plumbing equipment, whether a plumber or a homeowner, and, as such, it is highly suggestive if not descriptive of plumbing supplies"); *Logetronics, Inc. v. Logicon-Intercomp Inc.*, 199 USPQ 814, 818 (TTAB

1978) (in connection with family of marks claim utilizing the prefix LOG or LOGE, the Board observed that "the alleged root of the family, 'LogE', has an admittedly highly suggestive connotation (the log of exposure)"); *Ladish Co. v. Dover Corp*, 192 USPQ 462, 464 (TTAB 1976) (in connection with family of marks claim "characterized by the term TRI," the Board observed that "the term 'TRI' also has a descriptive or, at the least, highly suggestive meaning when used in connection with opposer's goods"); *Cambridge Filter Corp. v. Servodyne Corp.*, 189 USPQ at 103 (in connection with a family of marks claim for the family features FLO and CAP, the Board observed that "flow" or its equivalent "flo" possesses a highly suggestive if not a descriptive significance as applied to air filters and that "cap" is at least suggestive of the capacity of air filters). Opposer acknowledges the descriptiveness of the term SMOK: "Applicant may argue that the common wording [SMOK and SMOKES] is entitled to a narrow scope of protection given its descriptive nature."[48] *See Robinson v. Hot Grabba Leaf, LLC*, 2019 USPQ2d 149089, at *8 (statements in brief considered "admissions that the term 'grabba' is currently viewed by the relevant public as, at a minimum, immediately conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps"); TBMP § 704.06(b).

SMOK, the family feature of Opposer's alleged family of marks, is descriptive, and therefore, Opposer must make a "strong showing" of acquired distinctiveness for SMOK to serve as the family feature. *See Royal Crown Co. v. Coca-Cola Co.*, 127 USPQ2d at 1049 (a descriptive term can serve as a family feature "only where there

---

[48] Opposer's brief, 13 TTABVUE 13.

is a strong showing of secondary meaning in the term."). *See also Am. Aloe Corp. v. Aloe Creme Labs., Inc.,* 164 USPQ at 268-269 (ALO is the phonetic equivalent of the generic name "aloe" for goods containing aloe as an ingredient; defendant has not achieved sufficient secondary meaning in a family of ALO marks to preclude others from using the term).

In determining whether the alleged SMOK family feature has acquired distinctiveness we consider the evidence as a whole. *Modern Optics, Inc. v. Univest Lens Co.*, 234 F.3d 504, 110 USPQ 293, 295 (CCPA 1956) ("Viewing the evidence as a whole, it is by no means certain the words 'continuous vision' are descriptive of the function of trifocal lenses as distinguished from being merely suggestive thereof"); *cf. City of London Distillery, Ltd. v. Hayman Grp. Ltd.*, 2020 USPQ2d 11487, at *18 (TTAB 2020) (considering evidence as a whole in connection with acquired distinctiveness of a geographically descriptive term).

The considerations to be assessed in determining whether SMOK as a family feature has acquired secondary meaning "can be described by the following six factors: (1) association of the trade[mark] with a particular source by actual purchasers (typically measured by customer surveys); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage of the product embodying the mark. ... All six factors are to be weighed together in determining the existence of secondary meaning." *In re Snowizard, Inc.*, 129 USPQ2d

1001, 1005 (TTAB 2018) (quoting *Converse, Inc. v. Int'l Trade Comm'n*, 907 F.3d 1361, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018)).[49]

"On this list, no single factor is determinative." *In re Virtual Independent Paralegals, LLC*, 2019 USPQ2d 111512, at *11 (TTAB 2019) (citing *In re Tires, Tires, Tires Inc.*, 94 USPQ2d 1153, 1157 (TTAB 2009)). *See also In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420, 1424 (Fed. Cir. 2005) ("On this list, [copying, advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, and consumer studies (linking the name to a source)] no single factor is determinative. A showing of secondary meaning need not consider each of these elements. Rather, the determination examines all of the circumstances involving the use of the mark.").

Opposer's witness only addressed the *Converse* factors of length of use and amount and manner of advertising, testifying to relatively modest advertising expenditures of $1 million over a six-year period "under the mark 'SMOK,' including SMOK TECH, SMOK FASHION, SMOK MODS, SMOK ECIG, SMOK MINI and SMOK PIPE" as used on "vaping products."[50] Considering this testimony and evidence, we find that the alleged SMOK family feature has not acquired distinctiveness as part of an alleged family of marks. *See Royal Crown Co. v. Coca-Cola Co.*, 127 USPQ2d at 1049 (a descriptive term can serve as a family feature "only where there is a strong showing of secondary meaning in the term.").

---

[49] Although Opposer does not discuss *Converse*, we consider the arguments and the record evidence using the *Converse* framework.

[50] Huang Declaration ¶ 4, 8 TTABVUE 2.

Based on the foregoing, Opposer has not provided evidence that its claimed SMOK family feature has been used and promoted together in a manner sufficient to create public recognition prior to Applicant's effective filing date nor has it established the acquired distinctiveness of the asserted SMOK family feature, an admittedly descriptive term, prior to Applicant's effective filing date. We find that Opposer has not established a family of SMOK marks and "cannot prevail on a likelihood of confusion claim that is predicated on ownership of the family of marks." *TPI Holdings Inc., v. TrailerTrader.com, LLC*, 126 USPQ2d at 1429.

C.  Common law priority of SMOK and SMOK-formative marks

When an Opposer has not established priority of use of a family of marks, it may rely on the pleaded common law marks separately. *See Truescents LLC*, 81 USPQ2d at 1338 (because plaintiff did not establish ownership of a family of marks, priority and likelihood of confusion is based on each of the separate pleaded marks). Therefore, we consider, based on the record as a whole, whether Opposer has established separately, prior use at common law for any of the following marks: SMOK,[51] SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, SMOK FASHION and SMOK TECH, prior to Applicant's effective filing date. *W. Fla. Seafood, Inc.,* 31 USPQ2d at 1663 ("[O]ne should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use.").

---

[51] As noted in n.19 *supra*, Opposer specifically alleged likelihood of confusion with the goods listed in the SMOK Registration No. 4545449, which is not of record, and directed its argument to these goods. Notice of Opposition, ¶ 11, 1 TTABVUE 8; Opposer's brief, 13 TTABVUE 14. These goods are not identical to the goods listed in the SMOK Principal Register Registration No. 6072213 which is of record.

In order for Opposer to prevail on its claim of likelihood of confusion based on common law rights in any of its SMOK marks (SMOK, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, SMOK FASHION and SMOK TECH), each of "the mark(s) must be distinctive, inherently or otherwise, and plaintiff must show priority of use." *Wet Seal Inc. v. FD Mgmt. Inc.*, 82 USPQ2d 1629, 1634 (TTAB 2007) (*citing Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 44 (CCPA 1981)).[52]

As already discussed, we find Opposer's witness testimony is too vague and nonspecific to associate use of any of the SMOK or SMOK-formative marks identified by Opposer's witness with any particular goods or services or with any date of use, and there is no corroborating documentary evidence offered by the witness such as copies of invoices or receipts as to any of the SMOK or SMOK-formative marks identified. *See Elder Mfg. Co. v. Int'l Shoe Co.*, 194 F.2d 114, 92 USPQ 330, 333 (CCPA 1952) (oral testimony relating to prior use of a mark is strengthened by corroborative documentary evidence); *B.R. Baker Co. v. Lebow Bros.*, 150 F.2d 580, 66 USPQ 232, 236 (CCPA 1945) (testimony to establish prior use of a mark "should not be characterized by contradictions, inconsistencies, and indefiniteness but should carry with it conviction of its accuracy and applicability.").

---

[52] As to any marks that are not inherently distinctive, Opposer must establish that the designations acquired distinctiveness prior to Applicant's constructive use date. *Perma Ceram Enters. Inc. v. Preco. Indus. Ltd.*, 23 USPQ2d 1134, 1136 (TTAB 1992) ("where the mark relied upon by a plaintiff in support of its priority of use and likelihood of confusion claim is merely descriptive … then the plaintiff must establish priority of acquired distinctiveness").

Thus, the Huang testimony and evidence are simply insufficient to establish common law priority of use separately in connection with various goods of any of the marks (SMOK, SMOK MODS, SMOK ECIG, SMOK MINI, SMOK PIPE, SMOK FASHION, and SMOK TECH) prior to Applicant's constructive use date. Therefore, likelihood of confusion will be considered solely in connection with the pleaded Section 2(f) Principal Register SMOK mark that is of record.

## IV.   Likelihood of Confusion

We now turn our attention to the likelihood of confusion analysis and consider

Opposer's SMOK Principal Register mark vis-à-vis Applicant's  mark.

Our determination under Trademark Act Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) (setting forth factors to be considered, referred to as "*DuPont* factors").

In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods or services. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). We discuss the *DuPont* factors for which there is relevant argument and evidence. *See In re Guild Mortg. Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed.

Cir. 2019) (the Board considers each *DuPont* factor for which there is evidence and argument).

### A. Similarity of the Marks

We turn to the first *DuPont* factor, "similarity or dissimilarity of the marks." *In re E.I. du Pont*, 177 USPQ at 567. For this factor, we analyze "the marks in their entireties as to appearance, sound, connotation and commercial impression." *In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (*quoting In re E.I. du Pont*, 177 USPQ at 567). *See also Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *In re E.I. du Pont,* 177 USPQ at 567). "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs. Inc. v. Triumph Learning, LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (citation omitted). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1740 (TTAB 2014); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975).

Applicant's mark is ("smokes" disclaimed) and Opposer's mark is SMOK (Section 2(f)).[53] Opposer's SMOK mark is in standard characters and is not limited to any particular font style, size, or color. Trademark Rule 2.52(a); 37 CFR § 2.52(a) ("no claim is made to any particular font style, size, or color"). Although disclaimed in Applicant's mark, we consider the term SMOKES the dominant element in Applicant's word and design mark, which Applicant also has admitted.[54]

However, "[t]here is no general rule as to whether letters or design will dominate in composite marks; nor is the dominance of letters or design dispositive of the issue." *In re Electrolyte Labs. Inc.*, 913 F.2d 930, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990). Even if an element of a mark is dominant, this does not mean that other elements may simply be ignored in the likelihood of confusion analysis. *See Parfums de Coeur Ltd. v. Lazarus*, 83 USPQ2d 1012, 1016 (TTAB 2007). Moreover, when the word portion of marks are highly suggestive or descriptive, the presence of a design may be a more significant factor. *See In re Hamilton Bank*, 222 USPQ 174, 179 (TTAB 1984).

---

[53] As stated at nn.19 and 51 *supra*, Opposer also specifically pleaded in its notice of opposition and argued in its brief likelihood of confusion with its Registration No. 4545449 for the mark SMOK which covered different goods than those listed in Registration No. 6072213. However, as discussed above, Registration No. 4545449 is not of record, and Opposer did not establish common law prior use of this mark in connection with the goods identified in that registration.

[54] Opposer's notice of reliance, Applicant's response to request for admission no. 3, 5 TTABVUE 6.

Accordingly, if the common element of two marks is "weak" in that it is generic, descriptive, or highly suggestive of the named goods or services, other matter in the marks may be sufficient to avoid confusion. *In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818, 819 (Fed. Cir. 1986) (BED & BREAKFAST REGISTRY for making lodging reservations for others in private homes, and BED & BREAKFAST INTERNATIONAL for room booking agency services, is not likely to cause confusion, because the descriptive nature of the shared wording weighed against a finding that the marks are confusingly similar).

The disclaimer of SMOKES in Applicant's mark constitutes a concession that "smokes" is not inherently distinctive. *See In re Six Continents Ltd.*, 2022 USPQ2d 135, at *18 (TTAB 2022) ("Applicant's disclaimer of 'suites' is a concession that 'Suites' is not inherently distinctive"); *In re Pollio Dairy Prods. Corp.*, 8 USPQ2d 2012, 2014 n.4 (TTAB 1988) ("By its disclaimer of the word LITE, applicant has conceded that the term is merely descriptive as used in connection with applicant's goods") (citing *State Oil Refining Corp. v. Quaker Oil Corp.*, 161 USPQ 547 (TTAB 1969), *aff'd*, 453 F.2d 1296, 172 USPQ 361 (CCPA 1972)). TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1213.01(d) (July 2022). ("If the applicant elects to enter the disclaimer in the record and not appeal the requirement, then the disclaimer constitutes a concession that the matter is not inherently distinctive or registrable."). Based on the record here, we agree.

Opposer's SMOK mark was registered on the Principal Register under Section 2(f) based upon acquired distinctiveness, which serves as a concession that the mark in

its entirety is not inherently distinctive. *See Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988) ("Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the *statute* accepts a lack of inherent distinctiveness as an established fact.") (emphasis in original). *See also See Royal Crown Co. v. Coca-Cola Co.,* 127 USPQ2d at 1044-45 ("At the outset, because TCCC seeks registration of its ZERO-containing marks under Section 2(f) of the Lanham Act, TCCC has conceded that ZERO is not *inherently* distinctive in association with the genus of goods at issue—soft drinks, energy drinks, and sports drinks. And, TCCC thus concedes that ZERO is, to some extent, descriptive.") (emphasis in original); *Cold War Museum, Inc. v. Cold War Air Museum, Inc.,* 586 F.3d 1352, 92 USPQ2d 1626, 1629 (Fed. Cir. 2009) ("an applicant's reliance on Section 2(f) during prosecution presumes that the mark is descriptive"); *In re Uncle Sam Chem. Co.,* 229 USPQ 233, 235 (TTAB 1986) (SPRAYZON, the phonetic equivalent of "sprays on," being merely descriptive of the goods, was registrable under Section 2(f) based on a proper showing of acquired distinctiveness).

As to the conceptual strength of Opposer's SMOK mark, we find Opposer's SMOK mark is inherently weak. As already discussed, the record clearly establishes that SMOK is the phonetic equivalent of "smoke" and that the word "smoke" in connection with the identified goods and services is merely descriptive. Opposer does not dispute the descriptive nature of SMOK ("smoke").[55] *See Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC,* 2020 USPQ2d 10914, at *17 (TTAB 2020) (although plaintiff did

---

[55] Opposer's brief, 13 TTABVUE 13. *See* n.43, *supra.*

not address conceptual strength of its BROOKLYN marks, the Board found the BROOKLYN marks conceptually and inherently weak based not only on plaintiff's registrations issuing under Section 2(f), based on acquired distinctiveness, but also based on evidence in the record including the dictionary definition of Brooklyn and internet excerpts showing Brooklyn was a well-known geographic place), *aff'd in part, rev'd in part*, 17 F.4th 129, 2021 USPQ2d 1069 (Fed. Cir. 2021). Opposer acknowledges the inherent weakness of the terms SMOKES and SMOK: "Applicant may argue that the common wording [SMOK and SMOKES] is entitled to a narrow scope of protection given its descriptive nature."[56] *See Robinson v. Hot Grabba Leaf, LLC*, 2019 USPQ2d 149089, at *8 (statements in brief considered "admissions that the term 'grabba' is currently viewed by the relevant public as, at a minimum, immediately conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps").

The parties' marks are similar in appearance in that the literal portion of Applicant's mark contains the same first four letters of Opposer's mark SMOK. Although Applicant's mark includes the additional letters "es" to form the plural of "smoke," as Opposer points out, this is a minor point of difference.[57] *See Wilson v. Delaunay*, 245 F.2d 877, 114 USPQ 339, 341 (CCPA 1957) (there is no material difference, in a trademark sense, between the singular and plural forms of a word).

---

[56] Opposer's brief, 13 TTABVUE 13.

[57] Opposer's brief, 13 TTABVUE 12.

As discussed previously, Opposer's mark SMOK, in the context of the identified goods and services, is the phonetic equivalent of the word "smoke." *See In re Quik-Print Copy Shops*, 205 USPQ at 507 n.9 (QUIK-PRINT held descriptive; "There is no legally significant difference here between 'quik' and 'quick'"); *In re State Chem. Mfg. Co.*, 225 USPQ at 689 (FOM is the phonetic equivalent of "foam"). Therefore, we find Opposer's SMOK mark and the literal portion of Applicant's mark, SMOKES, are similar in pronunciation.

Furthermore, since we find that Opposer's SMOK mark is the phonetic equivalent of "smoke," Opposer's SMOK mark and the literal portion of Applicant's composite mark, SMOKES, convey similar or identical meanings. "Smoke" is an informal term for a cigarette or a cigar and is descriptive of Applicant's goods; and as previously discussed, "smoke" also has descriptive significance in connection with electronic cigarette goods which Opposer's registration covers. *See* OXFORD LIVING DICTIONARY.[58] *See also Andrew J. McPartland, Inc. v. Montgomery Ward & Co.*, 164 F.2d 603, 76 USPQ 97, 99 (CCPA 1947) (KWIXTART is the phonetic spelling of "quick start" which "was intended to describe merely that appellant's battery would start a motor or engine quickly."); *In re Hubbard Milling Co.*, 6 UPSQ2d 1239, 1240 (TTAB 1988) (MINERAL-LYX is the phonetic equivalent of "mineral licks" which is descriptive of mineral licks for animals). Opposer's SMOK mark and the literal portion of Applicant's composite mark, SMOKES, have similar commercial

---

[58] Application Serial No. 87856115, March 11, 2019 Office Action at TSDR 4. (oxforddictionary.com).

impressions because they may evoke smokable goods or goods used for smoking. The average purchasers of Applicant's and Opposer's goods are smokers who would recognize the descriptive significance of SMOK and SMOKES.

As stated, we must consider Applicant's mark in its entirety, including the design elements. The design features, with the colors red and white claimed as feature of the mark, include two white concentric circles with broken red lines with a square-shaped black border as the background carrier. The letters "s" at the beginning and the end of the term SMOKES are elongated by a long line either at the top or the bottom of the mark, spanning the entire word and reaching the border of the inner circle, and although Applicant's description of the mark in the application does not specifically state, we find that the elongated letter "s" design easily could be perceived by purchasers as evoking a lit cigarette with the letter "s" acting as a plume of smoke. *See T & T Mfg. Co. v. A. T. Cross Co.*, 178 USPQ 497, 498 (TTAB 1973) ("it is this drawing rather than applicant's own description of the mark that will govern the scope of protection afforded the registration thereof, when and if granted"); Trademark Rule 2.52, 37 C.F.R. § 2.52 ("A drawing depicts the mark sought to be registered."). *Cf. In re Covalinski*, 113 USPQ2d 1166, 1168-69 (TTAB 2014) (finding that the overall commercial impression of Applicant's mark is dominated by its design features, particularly the large elongated double-letter RR configuration; sufficient to make the mark dissimilar from mark with same literal component RACEGIRL); *In re Clutter Control Inc.*, 231 USPQ 588 (TTAB 1986) (The initial letter "c" in each word, "construct" and "closet," for the mark

**CONSTRUCT-A-CLOSET** was elongated both above and below the remaining letters and encompassed all the other letters of each word was sufficiently distinctive to allow registration with a disclaimer). Opposer's mark SMOK, the phonetic equivalent of the descriptive term "smoke," and the disclaimed term SMOKES in Applicant's mark are conceptually weak terms as used in connection with Applicant's goods and Opposer's goods and retail store services. Considering the marks in their entireties, we find that the addition of the broken concentric circle design and incorporation of the two elongated letters "s" to the disclaimed term SMOKES in Applicant's mark is sufficient to render Applicant's mark as a whole distinguishable from Opposer's mark to avoid confusion. *See In re Hamilton Bank*, 222 USPQ at 179.

Accordingly, the first *DuPont* factor supports a finding that confusion is not likely.

### B. Similarity or Dissimilarity of the Goods and Services

We next consider the *DuPont* factor regarding the similarity or dissimilarity of the parties' respective goods or services. When analyzing the second factor, we look to the identifications of goods and/or services in the application and Opposer's Principal Register SMOK registration.[59] *In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018).

"Even if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public

---

[59] As indicated at nn.51 & 53 *supra,* Opposer's relatedness arguments are directed to the goods covered by the Registration, No. 4545449 for the mark SMOK, which as discussed above, is not of record and for which common law prior use has not been established.

as to the origin of the goods." *Recot, Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000). Thus, the goods or services need only be "related in some manner or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Coach Servs.*, 101 USPQ2d at 1722 (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)).

Applicant's goods are "Cigarettes containing tobacco substitutes not for medical purposes containing only cannabis with a delta-9 THC concentration of not more than 0.3% on a dry weight basis."[60]

We consider most pertinent to Applicant's goods Opposer's Class 34 goods covered by its SMOK Principal Register registration: "Electronic cigarettes; Oral vaporizers for smokers; Smokers' oral vaporizer refill cartridges sold empty; Electronic cigarette atomizers sold empty; Electronic cigarette refill cartridges sold empty; Component parts of electronic cigarettes in the nature of tanks for electronic cigarettes, coils for electronic cigarettes, drip tips for electronic cigarettes, tank tubes for electronic

---

[60] Applicant's goods under the mark are registrable as they are no longer covered by the Controlled Substances Act (CSA). *See "*Examination Guide 1-19 Examination of Marks for Cannabis and Cannabis-Related Goods and Services after Enactment of the 2018 Farm Bill*"* (addressing the enactment of the 2018 Farm Bill and the examination of hemp goods that contain no more than 0.3% THC on a dry-weight basis that no longer fall under the definition of controlled substances under the CSA). The Examination Guide does note that "not all goods for CBD or hemp-derived products are lawful following the 2018 Farm Bill," "[t]he 2018 Farm Bill explicitly preserved FDA's authority to regulate products containing cannabis or cannabis-derived compounds under the FDCA," and that "registration of marks for foods, beverages, dietary supplements, or pet treats containing CBD will still be refused as unlawful under the FDCA [Food Drug and Cosmetic Act]." Exam Guide at p. 2.

cigarettes, and silicone rings for electronic cigarettes." We direct our focus particularly on "electronic cigarettes."

We take judicial notice of dictionary definitions of electronic cigarette[61] or e-cigarette (another term for electronic cigarette)[62] which include "a hand-held object that some people use to simulate the effect of smoking"[63] and "a battery-operated device that is typically designed to resemble a traditional cigarette and is used to inhale a usually nicotine-containing vapor."[64] We take judicial notice of the dictionary definition of the term "vape" which indicates that one may vape (inhale vapor) through an electronic device such as an electronic cigarette.[65]

Third-party website pages from the Vapor4Life website, provided by Opposer's witness as exhibit 1, state on their face "Best Online Vape and eJuice Shop." … "We are your one-stop shop for the best e-cigs, e-liquids, disposable vapes, mods, pods, nic salts and hardware. Whether looking to make the switch from smoking to vaping, you

---

[61] We acknowledge that many dictionary definitions for electronic cigarette and e-cigarette are not as broad as the above listed definitions and identify electronic cigarettes or e-cigarettes as a device that simulates cigarette smoking and contains liquid nicotine without the tar from tobacco that is vaporized by the device.

[62] OXFORD ENGLISH DICTIONARY, lexico.com https://www.lexico.com/en/definition/e-cigarette (accessed October 31, 2022).

[63] COLLINS DICTIONARY COBUILD ADVANCED ENGLISH DICTIONARY, Collins Dictionary.com, www.collinsdictionary.com/us/dictionary/english/e-cigarette (accessed October 31, 2022).

[64] MERRIAM-WEBSTER DICTIONARY, merriam-webster.com, www.merriam-webster.com/dictionary/electronic%20cigarette (accessed October 31, 2022).

[65] Vape is defined as "to inhale vapor through the mouth from a usually battery-operated electronic device (such as an electronic cigarette) that heats up and vaporizes a liquid or solid." MERRIAM WEBSTER DICTIONARY (merriam-webster.com) https://www.merriam-webster.com/dictionary/ vape (accessed October 31, 2022).

have come to the right place."[66] As to cannabis goods, the Kushism third-party website, submitted under notice of reliance, states on its face that it offers a "sizeable selection of vapes from licensed cannabis brands."[67] These websites show on their face that consumers have been exposed to vaping goods that can be used in connection with either nicotine or cannabis.

Opposer provided two third-party news articles under notice of reliance titled "The 14 Best Weed Vaporizers to Buy in 2021" and "How to Vape Weed and Get the Most Out of It." [68] Although these articles are hearsay, they do show on their face that the public has been exposed to articles relating to vaping "weed." *See Ricardo Media Inc. v. Inventive Software, LLC*, 2019 USPQ2d 311355, at *2 (TTAB 2019) (articles, whether from the Internet or printed publications, not accompanied by testimony, may not be considered for the truth of the matters asserted therein); *WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.*, 126 USPQ2d 1034, 1040

---

[66] Huang declaration, exhibit 1, 8 TTABVUE 26.

[67] Opposer's notice of reliance, 7 TTABVUE 58-64, (kushism.com).

[68] Opposer also argues expansion of trade, while acknowledging that this doctrine is typically applied in the priority of use context. Opposer's brief, 13 TTABVUE 17. *See Orange Bang, Inc. v. Olé Mexican Foods, Inc.*, 116 USPQ2d 1102, 1119 (TTAB 2015). *But see Time Warner Entm't Co. v. Jones*, 65 USPQ2d at 1662 (considering expansion of trade in relatedness analysis). Expansion of trade requires a specific analysis. *See Gen. Mills, Inc. v. Fage Dairy Processing Indus. S.A.*, 100 USPQ2d 1584, 1598 and n.28 (TTAB 2011) (expansion of trade requires a specific analysis) *judgment set aside, opinion not vacated,* 110 USPQ2d 1679 (TTAB 2014). There is nothing in the record to support an expansion of trade argument, and Opposer's witness' testimony that it has future plans for expansion into the cannabis market does not suffice. Therefore, Opposer's contentions in the brief are purely speculative, based solely on attorney argument, and do not substitute for evidence. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (citation omitted).

(TTAB 2018) (factual assertions on webpages not considered because they were not supported by any statement from a competent witness).

As identified in Opposer's registration, electronic cigarettes are not limited in their uses and could be sold empty and used in connection with tobacco substitutes such as cannabis and hemp products. Therefore, we find that Opposer's electronic cigarettes are related to Applicant's "cigarettes containing tobacco substitutes" in that they both could be used for the same purpose, vaping or smoking (inhaling) a particular smokable substance. *See, e.g.*, *In re Davia*, 110 USPQ2d 1810, 1812, 1817 (TTAB 2014) (finding pepper sauce and agave related where evidence showed both were used for the same purpose in the same recipes).

We find the second *DuPont* factor supports a finding of likelihood of confusion.

C. Channels of Trade

The third *DuPont* factor considers "the similarity or dissimilarity of established, likely-to-continue trade channels." *DuPont*, 177 USPQ at 567. There are no trade channel limitations in either Applicant's or Opposer's identifications of goods, and "the goods are presumed to travel in all normal channels and to all prospective purchasers for the relevant goods." *Coach Servs.*, 101 USPQ2d at 1722.

Opposer's witness testified that its goods are sold online, through smoking shops, vaping shops, and convenience stores.[69] Opposer's witness also indicated that its customer is over 21 years old and seeking an "alternative to cigarette smoking."[70] The

---

[69] Huang Declaration ¶ 7, 8 TTABVUE 3.

[70] Huang Declaration ¶ 10, 8 TTABVUE 3.

four third-party websites, attached as exhibit 1 to Opposer's witness testimony, show on their face the offering of electronic nicotine smoking devices for tobacco products.[71] All of these websites display a nicotine addiction warning at the top of the landing page.[72]

Opposer also submitted under notice of reliance copies of webpages from Opposer's and Applicant's websites and copies of webpages of five third-party websites selling cannabis-related vaping and pre-roll cannabis products.[73]

Opposer argues that the class of consumers for Applicant's and Opposer's goods is the same because both goods are targeted to consumers seeking alternatives to traditional cigarettes and are sold through the same venues.[74] However, it has not been established from this record that consumers that seek alternatives to traditional

---

[71] Huang Declaration exhibit 1, 8 TTABVUE 5-26. As previously noted, similar webpages from the Element Vape website were submitted under notice of reliance.

[72] We take judicial notice that "electronic cigarettes," components, and parts used with them are regulated tobacco products under the Food Drug and Cosmetic Act. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed...."); *Intercontinental Exch. Holdings, Inc. v. New York Mercantile Exch., Inc.*, 2021 USPQ2d 988, at *12 n.12 (TTAB 2021) (Board took judicial notice of EU regulations and definitions regarding the GDPR). *See* in particular the "Deeming Rule" published in the Federal Register which states that "[p]roducts that meet the statutory definition of 'tobacco products' include currently marketed products such as dissolvables not already regulated by FDA, gels, waterpipe tobacco, ENDS (including e-cigarettes, e-hookah, e-cigars, vape pens, advanced refillable personal vaporizers, and electronic pipes), cigars, and pipe tobacco." DEEMING TOBACCO PRODUCTS TO BE SUBJECT TO THE FEDERAL FOOD, DRUG, AND COSMETIC ACT, AS AMENDED BY THE FAMILY SMOKING PREVENTION AND TOBACCO CONTROL ACT; RESTRICTIONS ON THE SALE AND DISTRIBUTION OF TOBACCO PRODUCTS AND REQUIRED WARNING STATEMENTS FOR TOBACCO PRODUCTS ("Deeming Rule"), 81 Federal Register Vol. 81 28974, 28975-76 (May 10, 2016).

[73] Opposer's notice of reliance, 7 TTABVUE 28-38. As indicated previously in the priority discussion, Opposer's witness testified that Opposer's marketing is through social media. Huang Declaration ¶ 8, 8 TTABVUE 3.

[74] Opposer's brief, 13 TTABVUE 16.

tobacco cigarettes also seek or use cannabis goods. In addition, the website evidence as a whole does not show on its face the offering of both these types of goods on the same websites.[75]

In particular, as to the third-party websites offering electronic cigarettes, components and parts, four are offering only tobacco products. Of the five third-party websites offering only cannabis-based products, at least three of the websites appear to be on their face local dispensaries, which are regulated licensed entities,[76] also showing on their face that they offer online ordering but require local pickup. Opposer itself identifies at least two of these websites as dispensaries and acknowledges that these cannabis goods only may be offered where cannabis is sold legally.

Opposer has not shown that smoking shops, vaping shops, and convenience stores constitute an ordinary trade channel for Applicant's identified goods. Opposer relies on the websites offering cannabis, where it apparently is legally sold in certain states in the United States, that offer pre-rolled cigarettes and vaporizers or vaping devices as evidence of trade channel overlap. However, the fact that vaping type goods may

---

[75] Although one website webpage shows under "new arrivals," on what appears to be a continuation of the same webpage, vape goods and some CBD goods, all offered by different manufacturers, we find this evidence alone is insufficient to establish overlapping trade channels. Opposer's notice of reliance. 7 TTABVUE 7. *See, e.g.*, *Borg-Warner Chem., Inc. v. Helena Chem. Co.*, 225 USPQ 222, 224 (TTAB 1983) (finding no likelihood of confusion where both products were chemical compositions and sold under identical marks but the evidence was insufficient to establish a reasonable basis for assuming that the respective goods as identified by their marks, would be encountered by the same purchasers).

[76] We note, for example, the definition of "dispensary" in the MD. CODE HEALTH GEN. ART. § 13-3301(e) as "an entity licensed under this subtitle that acquires, possesses, processes, transfers, transports, sells, distributes, dispenses, or administers cannabis, products containing cannabis, related supplies, related products containing cannabis including food, tinctures, aerosols, oils, or ointments, or educational materials for use by a qualifying patient or caregiver."

be sold on the cannabis-only websites does not establish an overlap in trade channels with electronic cigarette tobacco products on different websites that offer only tobacco products, nor does it establish trade channel overlap in smoking shops, vaping stores or convenience stores. We find, on this record, it has not been established that cannabis products and tobacco products are sold in the same trade channels to the same consumers.

In light of the above, the mere fact that Applicant and Opposer have their own Internet websites advertising or offering their goods is not a sufficient basis to find overlapping trade channels. *Parfums de Couer*, 83 USPQ2d at 1021 ("the mere fact that goods and services may both be advertised and offered through the Internet is not a sufficient basis to find that they are sold through the same channels of trade"). *See also Inter IKEA Sys.*, 110 USPQ2d at 1743 (rejecting opposer's theory that "any goods or services sold through retail stores, catalogs or over the Internet move through the same channels of trade and, therefore, for all intents and purposes, all goods and services potentially move through the same channels of trade").

Therefore, we find the trade channels are distinct for Applicant's and Opposer's goods and do not overlap. The third *DuPont* factor favors a finding of no likelihood of confusion.

V. Conclusion

We have considered all of the evidence pertaining to the relevant *DuPont* factors, as well as the arguments with respect thereto. Although we find the goods related, due to the weakness of the common element of the two marks and the sufficiently

distinctive design elements in Applicant's mark, we find the marks are dissimilar, and overall, the channels of trade do not overlap. Therefore, we find no likelihood of confusion.

**Decision:** The opposition is dismissed.

APPENDIX

TESS (Trademark Electronic Search System) image that precedes TESS search result displaying database updated status date (blue arrow added to highlight the database date):



TSDR (Trademark Status and Document Retrieval) image reflecting record generation date for status search result and print and download options (blue arrow added to highlight the database generation date).



Plain copy of certificate of registration submitted with the notice of opposition: for pleaded Registration No. 6072213 SMOK:



# United States of America
## United States Patent and Trademark Office

# SMOK

**Reg. No. 6,072,213**

**Registered Jun. 09, 2020**

**Int. Cl.: 9, 34, 35**

**Service Mark**

**Trademark**

**Principal Register**

Shenzhen IVPS Technology Co. Ltd. (CHINA LIMITED LIABILITY COMPANY)
3/f.tean Jiejing Nengyuan Tech Bldg.
Shenzhen, CHINA 518000

CLASS 9: Chargers for electronic cigarettes; Batteries for electronic cigarettes; Battery chargers for electronic cigarettes; Battery covers in the nature of battery cases for electronic cigarettes

FIRST USE 5-12-2011; IN COMMERCE 6-26-2013

CLASS 34: Electronic cigarettes; Oral vaporizers for smokers; Smokers' oral vaporizer refill cartridges sold empty; Electronic cigarette atomizers sold empty; Electronic cigarette refill cartridges sold empty; Component parts of electronic cigarettes in the nature of tanks for electronic cigarettes, coils for electronic cigarettes, drip tips for electronic cigarettes, tank tubes for electronic cigarettes, and silicone rings for electronic cigarettes

FIRST USE 5-12-2011; IN COMMERCE 6-26-2013

CLASS 35: On-line retail store services featuring electronic cigarettes, oral vaporizers for smokers

FIRST USE 8-28-2016; IN COMMERCE 8-28-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4692377, 4545449

SEC.2(F)

SER. NO. 88-059,009, FILED 07-31-2018

Director of the United States
Patent and Trademark Office



TESS screenshot capture submitted with Notice of Opposition for pleaded Registration No. 6072213 SMOK omitting the TESS database status date:



TESS screenshot capture submitted with Notice of Opposition for pleaded Registration No. 4545449 SMOK omitting the TESS database status date:

